## INTERNATIONAL AMUSEMENT CO. v. ALDERETE. (No. 1943.)

(Court of Civil Appeals of Texas. El Paso. Dec. 2, 1926.)

1. Partnership ☞311(3)—Agreement on transferring portion of partnership assets to one of partners held partnership accounting, and binding, in absence of fraud and mistake.

Agreement for transfer and assignment of portion of partnership assets to one of partners, with provisions as to assumption of obligations, *held* to constitute a partnership accounting, which, in absence of fraud and mistake, was binding on parties thereto.

2. Partnership ☞284—Partner, assuming obligations of theater lease transferred to him by partnership, held liable for coal used.

Partner, assuming obligations as to one of theater leases assigned to him by partnership, was liable for coal purchased for theater before agreement, but not used until thereafter.

Appeal from El Paso County Court, at Law; J. M. Deaver, Judge.

Suit by the International Amusement Company against F. G. Alderete. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

N. D. Meyer, of El Paso, for appellant. Chas. Owen, of El Paso, for appellee.

PELPHREY, C. J. Appellant brought this suit in the justice court of El Paso, Tex., against appellee for the sum of $123.64, alleging: That appellee had, prior to December 31, 1924, been a partner in the International Amusement Company; that on said date an agreement was entered into between the parties interested in said International Amusement Company whereby the Alcazar Theatre and all personal property of whatever nature located thereon, together with the lease of the building in which it was located, were assigned and transferred to appellee; that appellee assumed the payment of all obligations theretofore undertaken by the International Amusement Company in the operation of the said Alcazar Theatre; that prior to said agreement, and during the time said theater was being operated by appellant, 12 tons of coal had been contracted for from Heid Bros., for said theater; that thereafter the appellant was compelled to pay for said coal; and that appellee refuses to repay appellant the sum so paid.

Appellee filed a general denial and specially pleaded that no final partnership accounting was ever had between the parties; that the indebtedness to Heid Bros. for coal had amounted to $400, more or less; that all said sum had been paid except $123; and that appellee, if he was liable for any part of said obligation, was liable only for one-sixth thereof, that being his interest in the International Amusement Company.

The case was tried in the justice court and appealed to the county court at law of El Paso county, Tex., from which court this appeal is prosecuted.

The case was tried before the court without the intervention of a jury, and judgment was rendered for appellee. The trial court filed findings of fact and conclusions of law.

## Opinion.

The agreement upon which this suit is based reads as follows:

"Whereas, by instrument dated April 12, 1919, Ysabel U. de Urrutia, Frank Alderete, International Exchange & Commission Company, M. Salazar, Juan de la C. Alarcon, Simon Turk, and J. Munoz Fernandez did enter into a copartnership agreement, the said agreement to continue for a period of five years beginning April 14, 1919, and expiring April 14, 1924, and the same having been formed for the purpose of operating certain moving picture theaters described in said copartnership contract, as well as such other moving picture theaters as should be acquired thereafter by said copartnership.

"And whereas, the term of said contract has now expired, and therefore all property and property rights of said copartnership are now owned by the members of said copartnership as they existed at the expiration of the term of said copartnership contract, and for the purpose of convenience the capital of said copartnership has been divided into 6,000 shares, and the personnel of said copartnership has in some respects changed, and all the shares of said capital of said copartnership, as well as all of said copartnership property, are now owned by the undersigned in the following interests, to wit:

| | |
|---|---|
| Frank G. Alderete | 1,000 shares |
| M. Salazar | 1,100 shares |
| Calderon y Salas Porras | 3,300 shares |
| Luis Alfonso Calderon | 500 shares |
| Leo Armijo | 100 shares |
| Total | 6,000 shares |

"And whereas, the moving picture theaters now owned and controlled by the said copartnership are as follows: Alcazar, Rex, Colon, Paris, Alameda, Mexico, Ideal, Estrella, Eureka and Hidalgo, the last two of said picture show houses having been discontinued, as such.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"And whereas, the aforesaid respective owners of the shares of the capital of said former copartnership are now the joint owners of all the assets of said copartnership in the respective proportions that they own the shares of the capital thereof as above set out, and a partition of the assets and liabilities of said former copartnership has been mutually agreed upon by and between the said Frank G. Alderete of the one part and the other members of said former copartnership of the other part, all of which it is desired to evidence by this agreement: Now, therefore,

"Know all men by these presents: That we, Frank G. Alderete, herein called first party, and M. Salazar, Calderon y Salas Porras, Luis Alfonso Calderon, and Leo Armijo, herein called second parties, do agree with each other as follows:

"(1) Second parties do hereby transfer, assign, bargain, sell, and deliver unto first party all their right, title, and interest in and to a certain lease contract heretofore entered into by and between A. Stolaroff and International Amusement Company, dated April 2, 1921, whereby the premises known as 506–608 South El Paso street, in the city of El Paso, Tex., in which the Alcazar Theatre is now located, was leased to International Amusement Company; also all personal property of whatsoever nature located in and incident to said Alcazar Theatre heretofore belonging to International Amusement Company, as well as all moneys and assets of each and every character on ·hand, incident to and connected with the said Alcazar Theatre. It is especially provided, however, that the first party assumes the payment of and agrees to pay all rentals provided for by said lease contract as the same become due and payable and to live up to and abide by all the terms and conditions undertaken by the lessees in said lease contract and to pay all obligations of whatsoever nature incurred in connection with the operation of said Alcazar Theatre, including the assumption of the payment of all obligations and liabilities under all contracts heretofore undertaken or entered into in connection with the operation of the Alcazar Theatre, save and except the contract with the Paramount Film Company, and he agrees to hold harmless and indemnify second parties against all lawful claims of whatsoever nature which may be asserted against them by reason of the former ownership and operation of said Alcazar Theatre by International Amusement Company, or any of the parties hereto.

"(2) First party does hereby transfer, assign, bargain, sell, and deliver to second parties all of his interest in and to all lease contracts of whatsoever nature entered into by and between · International Amusement Company, or any party interested in said company for any building located in the city of El Paso, Tex., now or heretofore used for the operation and conduct of the Rex, Colon, Paris, Alameda, Mexico,· Ideal, Estrella, Eureka, and Hidalgo, and also all personal property, moneys on hand, and assets of each and every character belonging to International Amusement Company, or any ·of the members ·thereof, wherever the same may be situated other than, saving and excepting only the assets, property, and rights of property transferred and assigned to first party by the preceding paragraph hereof. It

is especially provided, however, that second parties assume the payment of and agree to pay all rentals due, or to become due, by reason of any contract of whatsoever nature for the rental or lease of any and all buildings occupied or heretofore occupied by the theaters especially designated in this paragraph, or any other lease contract of said company except the one this day conveyed to party of first part, for the payment of which International Amusement Company, or any of its members, may have become liable, and the second parties further agree to abide and comply with all the terms and conditions of any and all lease contracts heretofore entered into by International Amusement Company, or any of the parties hereto, for the lease and rental of any of the buildings now or heretofore occupied by any of the theaters named in this paragraph or any others for which the International Amusement Company is liable, and they, second parties, assume the payment of and agree to pay all liabilities of whatsoever nature now owing by International Amusement Company, other than those especially assumed by first party in the preceding paragraph hereof, and they agree to hold first party harmless from all liabilities of whatsoever nature in connection with the obligations assumed by them.

(3) First party hereby transfers and assigns to second parties all his rights and interest in the trade-name of International Amusement Company, and he agrees that he will not engage in business or continue in business under such name, but that second parties and their assigns shall have the right to continue in business and engage in business under such trade-name.

"The transfer and assignment hereby made by first party to second parties is in the respective proportions as evidenced by the shares of the capital of International Amusement Company, owned by them as above set out.

"For the faithful performance of all herein contained and undertaken on the part of the respective parties hereto, they have signed their names to duplicate originals of this agreement, this 31st day of December, 1924.

"F. C. Alderete,
"M. Salazar,
"Calderon y Salas Parras,
"by R. Calderon J
"Leo Armijo,
"L. A. Calderon."

There are five assignments of error presented in appellant's brief, but we are of the opinion that they can all be discussed together.

The evidence discloses that appellant in May, 1924, ordered 41 tons of coal from Heid Bros. for all of its theaters; that the order called for delivery of different quantities to different theaters; that 12 tons were ordered for the Alcazar Theatre, and were delivered on July 8, 1924; that appellee took charge of said Alcazar Theatre on June 24, 1924, and thereafter paid all bills incident to the operation of said theater, except the coal bill; and that appellant and appellee made reports to each other of daily receipts and expenses from June 24, to December 31, 1924, but that neither party turned over to the other any mon-

eys received from the theaters they were operating.

Appellant introduced the above agreement in evidence as proof of a partnership accounting and adjustment, while appellee denied that any accounting had ever been had.

[1] Under the facts of this case, as above stated, we cannot escape the conclusion that the agreement entered into between the parties on December 31, 1924, was a partnership accounting, and that, in the absence of fraud or mistake, it is binding upon the parties thereto.

In that agreement, appellee obligated himself to pay all obligations of whatsoever nature incurred in connection with the operation of said Alcazar Theatre, including the assumption of the payment of all obligations and liabilities under all contracts theretofore undertaken or entered into in connection with the operation of the Alcazar Theatre, except the contract with the Paramount Film Company, and further agreed to indemnify appellant against any lawful claims of whatsoever nature which might be asserted against it by reason of the former ownership and operation of said Alcazar Theatre by The International Amusement Company.

It is uncontradicted that the coal in question was used in the Alcazar Theatre after appellee had taken over the operation of same, and that from June 24 to December 31, 1924, appellee retained all moneys taken in at said Alcazar Theatre, and paid all expenses incurred by said theater except this one expense for fuel.

[2] We are of the opinion that the expense for coal to heat the Alcazar Theatre was an obligation incurred in connection with the operation of the Alcazar Theatre and one which appellee had agreed to assume, and that appellant, having been forced to pay said obligation, is entitled to recover the amount so paid from appellee under his agreement.

The case is therefore reversed, and judgment here rendered that appellant recover of appellee the sum of $123.64, and all costs.